IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSHUA DAVID MARTINEZ, | § | |
|     TDCJ-CID #1076379 | § | |
| v. | § | C.A. NO. C-08-197 |
| | § | |
| R. MENCHACA, ET AL. | § | |

## ORDER DISMISSING CERTAIN CLAIMS AND RETAINING CASE

This is a civil rights action filed by a state prisoner pursuant to 42 U.S.C. § 1983.

Pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee or proceeds as a pauper. Ruiz v. United States, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam). Plaintiff's *pro se* complaint must be read indulgently, Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, Denton v. Hernandez, 504 U.S. 25, 33 (1992).

Applying these standards, plaintiff's claim that defendant Menchaca violated prison regulations is dismissed. His claims that defendants violated his constitutional rights are retained; however, Nathaniel Quarterman, Director of the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID"), will be substituted for defendant Brad Livingston as a named defendant. Service will be ordered on defendants Menchaca and Quarterman.

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331. On July 7, 2008, this case was referred to the undersigned magistrate for all further proceedings, including entry of final judgment. (D.E. 17).

## II. FACTUAL BACKGROUND

Plaintiff is an inmate in the custody of the TDCJ-CID. At all relevant times, he was incarcerated in administrative segregation at the McConnell Unit in Beeville, Texas.

On July 5, 2007, officers conducted an annual search of the inmates' living quarters. (D.E. 1, at 7). Officer Menchaca approached cell C-5, where plaintiff was housed, and ordered him to place his property on his bunk. Id. at 7. After he complied, Officer Menchaca ordered him to submit to a "body search." Id. For a prisoner housed in administrative segregation, this entails undressing, passing his clothes through the tray slot, and undergoing a visual inspection. Id. at 8. Plaintiff complied; however, as Officer Menchaca handed plaintiff his clothes back through the tray slot, he observed plaintiff concealing something in his hand. Id. He ordered plaintiff to "release whatever he had in his hand." Id. Plaintiff complied, revealing a Motorola cellular phone charger with a black cord. Id. He was then searched again, restrained, and taken from his cell, leaving his personal property on his bunk. Id.

Plaintiff was advised of his Miranda rights, and subsequently declined to be interviewed.[1] (D.E. 1, at 9). The interviewer told officers to search him thoroughly and place him in a holding cell. Id. In the holding cell, officers discovered a cellular phone hidden in plaintiff's footwear.

---

[1] It is a felony for a TDCJ inmate to possess a cellular phone. Tex. Penal Code § 38.11(j). Plaintiff was convicted of this offense, and received a three-year prison term on March 10, 2008, in State v. Martinez, No. B-07-M015-0-PR-B.

2

Id. He again declined to make a statement to the interviewer, and demanded that his other personal property be returned. Id. An officer informed him that Officer Menchaca would return his property later. Id. Plaintiff then refused to accept an assignment to cell E-74, triggering a use of force. Id. He was charged with a disciplinary violation for possessing the cellular phone. Id.; see also (D.E. 1, App. C).

On Friday, July 6, 2007, plaintiff was removed from cell E-74 and relocated to cell F-57. (D.E. 1, at 9). His personal property was not returned, nor was he given any state-issued items such as sheets or a mattress. Id. at 10. On Monday, July 9, 2007, officers returned his personal and state-issued property. Id. As he inspected it, plaintiff discovered that Officer Menchaca had not recorded all of his personal property on the inventory sheet, as TDCJ-CID regulations require. Id. Moreover, Officer Menchaca did not return numerous items of personal property: (1) a Smith-Corona typewriter; (2) five used typewriter ribbons; (3) two new typewriter ribbons; (4) five forty-one cent postage stamps; (5) three containers of baby powder; (6) one toothbrush; (7) four ink pens purchased from the commissary; or (8) the TDCJ property registration sheets for his appliances. Id. at 11. Moreover, three pages containing contact information for plaintiff's friends and family had been ripped from a notebook. Id.

The inventory sheet did not indicate who had removed his property from his cell. Id. It also failed to explain why the items had not been returned. Id. Furthermore, plaintiff claims that the inventory sheet clearly shows that Officer Menchaca forged a witness signature. Id.[2]

---

[2] Plaintiff provides a blank property inventory form, (D.E. 1, App. D.), but not the form on which Officer Menchaca allegedly forged the signature. (D.E. 1, at 11).

On July 20, 2007, plaintiff filed a Step 1 grievance requesting that the missing items be returned.³ (D.E. 1, App. A). On August 24, 2007, the Warden replied that the pens and stamps had been returned to him; however, the typewriter would not be returned because it had been tampered with, rendering it contraband. Id. at 2. On August 29, 2007, plaintiff filed a Step 2 grievance. (D.E. 1, App. B, at 1). He argued that the pens and stamps had not been returned, and that he had not been notified that his typewriter was to be confiscated as contraband. Id. Moreover, he explained that Officer Menchaca had personally given him permission to modify the typewriter by tying down the ribbon carrier, which broke after TDCJ officials mishandled it. Id. On November 2, 2007, plaintiff's Step 2 grievance was denied. Id. at 2. The grievance officer explained that no evidence showed that he had owned the ribbons, stamps, baby powder, toothbrush, or pens, or that TDCJ was responsible for their loss. Id. Moreover, his typewriter would not be returned because it had been altered, and used to hide a cellular phone charger cord in violation of TDCJ policy. Id.

Plaintiff also alleges that Officer Menchaca failed to inventory or return two packs of cookies and three packs of vanilla wafers taken from his cell on April 25, 2008. (D.E. 1, at 16). He has not sought relief in state court for any of the incidents alleged in this action.

Plaintiff is suing Officer Menchaca in his personal and official capacities for $250.00. (D.E. 11, at 1). He claims that Officer Menchaca wrongfully confiscated his typewriter in violation of TDCJ-CID policies, and of his due process rights. (D.E. 1, at 6). He claims also that Officer Menchaca intentionally withheld, lost, and damaged "important documentation," and

---

³ In his Step 1 grievance, plaintiff describes the items as "missing or damaged." (D.E. 1, App. A, at 1).

also forged witnesses' signatures and signed documents he was not authorized to sign in violation of TDCJ-CID rules and policies. Id.

Plaintiff is also suing TDCJ Executive Director Brad Livingston in his official capacity, as the policymaker responsible for TDCJ-CID Administrative Directive 3.72. He argues that the policy, which governs the property of prisoners in administrative segregation, is constitutionally inadequate because it leaves offenders with no means to prove deprivation of property. (D.E. 1 at 7); (D.E. 18 at 2-3). He also claims that, because the policy leaves inmates with no effective means of redress, officers regularly "do as they please without following TDCJ policies." (D.E. 1, at 7).

### III. DISCUSSION

**A.     Legal Standard.**

The Fifth Circuit has explained that "complaints which present even a slight chance of success should not be dismissed under section 1915(d)." Murphy v. Collins, 26 F.3d 541, 543 (5th Cir. 1994). It is well established that "[t]o state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); see also Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995) (per curiam). An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief. Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002) (citation omitted). The complaint must be liberally construed in favor of the prisoner, and the truth of all pleaded facts must be assumed. Id. (citation omitted).

**B.      Plaintiff's Claim That Defendant Menchaca Violated His Due Process Rights.**

The Fourteenth Amendment of the Constitution provides that no State shall "deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV § 1.  However, the negligent loss or destruction of property does not violate an inmate's constitutional rights.  Daniels v. Williams, 474 U.S. 327, 328 (1986).  Furthermore, the Supreme Court has held that even an intentional deprivation of property does not violate the Due Process Clause if it is unauthorized, and the State provides an adequate post-deprivation remedy.  See Hudson v. Palmer, 468 U.S. 517, 534-35 (1984); Parratt v. Taylor, 451 U.S. 527, 543 (1981); accord Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996) (per curiam).  "The [Parratt/Hudson] doctrine is meant to protect the state from liability for failing to provide pre-deprivation process in situations where it cannot anticipate the need for such process (when the actions complained about are random and unauthorized)."  Brooks v. George County, Miss., 84 F.3d 157, 165 (5th Cir. 1996) (citation omitted).  For this type of violation, "postdeprivation process is all that is due because no predeprivation safeguards would be of use in preventing the kind of deprivation alleged."  Zinermon v. Burch, 494 U.S. 113, 139 (1990).

However, the Parratt/Hudson doctrine applies only when the conduct is "unauthorized in the sense that it was not within the officials' express or implied authority."  Stotter v. University of Tex. at San Antonio, 508 F.3d 812, 822 (5th Cir. 2007) (citing Caine v. Hardy, 943 F.2d 1406, 1413 (5th Cir. 1991) (en banc)).  Conduct is not unauthorized where "the state 'delegated to [the defendants] the power and authority to effect the very deprivation complained of.'"  Allen v. Thomas, 388 F.3d 147, 149 (5th Cir. 2004) (quoting Zinermon, 494 U.S. at 138); see also Brooks, 84 F.3d at 165 ("actions in accordance with an 'official policy' ... can hardly be labeled

'random and unauthorized'") (citation omitted). Moreover, the Fifth Circuit has determined that the Parratt/Hudson doctrine does not protect conduct authorized by TDCJ Administrative Directive 3.72. Allen, 388 F.3d at 149. The Allen court explained that because the typewriter was "confiscated under the authority of a prison directive [AD 3.72], the confiscation was not a random, unauthorized act by a state employee." Id. Thus, although Texas' postdeprivation remedy for deprivation of property is adequate, plaintiff was not required to seek relief in state court before filing this action asserting a denial of due process.[4]

As plaintiff has alleged defendant Menchaca intentionally deprived him of property, he has stated a claim for a constitutional violation. However, to the extent plaintiff seeks damages from him in his official capacity, his claim is against the TDCJ, which employs him. See Kentucky v. Graham, 473 U.S. 159, 166 (1985). The TDCJ is a state agency, and the Eleventh Amendment bars suits for money damages against a state agency. Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996); Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004); Pendergrass v. Greater New Orleans Expressway Comm'n, 144 F.3d 342, 343-44 (5th Cir. 1998); see also Aguilar v. Texas Dep't of Criminal Justice, 160 F.3d 1052, 1054 (5th Cir. 1998) (Texas and its instrumentalities enjoy Eleventh Amendment immunity). A judgment for damages may not be entered against a state officer in his official capacity for violating federal law in the past, although prospective relief may be granted. See Puerto Rico Aqueduct & Sewer

---

[4] Murphy, 26 F.3d at 543 ("the tort of conversion fulfills this requirement [of an adequate post-deprivation remedy]"); Beam v. Voss, 568 S.W.2d 413, 420 (Tex. Civ. App. 1978) (conversion is "[t]he unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another, to the exclusion of, or inconsistent with the owner's rights"); see also Tex. Gov't Code § 501.007 (authorizing the TDCJ to award up to $500 on claims that the TDCJ-CID lost or damaged an inmate's personal property).

Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993).  Plaintiff's claim for damages against defendant Menchaca in his official capacity is therefore dismissed.  His claim for damages against defendant Menchaca in his personal capacity is retained.

**C.      Plaintiff's Claim that Defendant Menchaca Failed to Follow TDCJ Procedures.**

Plaintiff claims that defendant Menchaca failed to follow the proper procedures regarding his personal property.  (D.E. 1, at 6).  However, the mere failure of prison authorities to follow prison rules and regulations does not, without more, give rise to a constitutional violation. Myers, 97 F.3d at 94 (citations omitted); Murphy, 26 F.3d at 543.  Accordingly, plaintiff's claims are dismissed insofar as they are based on violations of TDCJ regulations rather than constitutional rights.

**D.      Plaintiff's Claims That Defendant Livingston Implemented Unconstitutional Policies.**

Finally, plaintiff sues defendant Livingston in his personal capacity for implementing unconstitutional policies governing the property of prisoners housed in administrative segregation.  He argues that, because prisoners housed in administrative segregation are not present when their cells are searched, officers can and do violate TDCJ property regulations with impunity.  (D.E. 1, at 7).  When property is lost or stolen, prisoners cannot obtain relief through the grievance process because another TDCJ policy provides that "the Agency will not be responsible for any [sic] loss, damaged, stolen or destroyed property where there is no evidence to support the offender's claim."  (D.E. 18, at 1).  In contrast, prisoners in the general population are present during searches, and have a cellmate who can serve as a witness in any subsequent proceedings.

The Supreme Court had held that "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." Frew, 540 U.S. at 437 (citation omitted). Supervisors are not generally liable in a § 1983 suit for the acts of their subordinates. See Oliver, 276 F.3d at 472 ("Section 1983 does not create supervisory or *respondeat superior* liability."). However, supervisors may be liable for injuries caused by their own acts or omissions. Id. at 472 n.6 (citing Alton v. Tex. A&M Univ., 168 F.3d 196, 200 (5th Cir. 1993)). This liability includes injuries caused by unconstitutional policies for which they are responsible. Burge v. St. Tammany Parish, 336 F.3d 363, 369 (5th Cir. 2003). Such a policy can be either one that is "officially adopted," or a "persistent, widespread practice" which "is so common and well settled as to ... fairly represent [official] policy." Id. (quoting Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984) (per curiam)). "A claim of a violation of section 1983 pursuant to ... a persistent, widespread practice ... may in an appropriate case also encompass allegations that a policymaker failed to act affirmatively, including a failure to adequately train a subordinate." Id.

Plaintiff explicitly alleges the existence of an official policy. However, it is TDCJ-CID Director Nathaniel Quarterman who is authorized to promulgate official policies relating to inmate property, and not TDCJ Executive Director Brad Livingston. See Tex. Gov't Code § 494.002 (authorizing director of TDCJ-CID to adopt policies governing inmate life). Accordingly, Director Livingston is dismissed as a defendant in this suit, and Director Quarterman substituted in his place.

Plaintiff alleges that TDCJ-CID policies violate his due process rights. The Supreme Court has explained that due process is "a flexible concept that varies with the particular

9

situation." Zinermon, 494 U.S. at 127. Determining what procedural protections the Constitution requires entails weighing several factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)); see also id. at 128 ("*Parratt* and *Hudson* represent a special case of the general *Mathews v. Eldridge* analysis, in which postdeprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide."). Based on the allegations presented, plaintiff may be able to prove that TDCJ policies caused him to be unconstitutionally deprived of property. See Oliver, 276 F.3d at 741 (in official capacity suits, plaintiffs need only "provide 'a short and plain statement of the claim,'" as opposed to alleging "specific conduct giving rise to a constitutional violation" in individual capacity suits). Accordingly, this claim is retained.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that:

(1) plaintiff's personal capacity damages claim against defendant Menchaca is retained on the Court's docket;

(2) plaintiff's official capacity damages claim against defendant Menchaca is dismissed;

(3) plaintiff's claims that defendant Menchaca violated TDCJ policies is dismissed;

(4) TDCJ Executive Director Brad Livingston is dismissed as a defendant in this action, replaced by TDCJ-CID Director Nathaniel Quarterman; and

(5) plaintiff's claim that defendant Quarterman implemented unconstitutional regulations is retained on the Court's docket.

(6) plaintiff's motion seeking prosecution, (D.E. 15), is GRANTED consistent with this Order

ORDERED this 23rd day of July 2008.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE