IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSHUA DAVID MARTINEZ, | § | |
|     TDCJ-CID #1076379 | § | |
| v. | § | C.A. NO. C-08-197 |
| | § | |
| R. MENCHACA, ET AL. | § | |

## ORDER GRANTING DEFENDANTS' MOTION FOR A PROTECTIVE ORDER

This is a civil rights action filed by a state prisoner pursuant to 42 U.S.C. § 1983. Pending is defendants' motion for a protective order. (D.E. 45). In response, plaintiff has filed a motion for defendants to comply with disclosure. (D.E. 48). In turn, defendants have filed a response to plaintiff's motion for defendants to comply with disclosure. (D.E. 49).

### I. PROCEDURAL HISTORY

Plaintiff is an inmate in the custody of the Texas Department of Criminal Justice-Correctional Institutions Division ("TDCJ-CID"). At all relevant times, he was incarcerated in administrative segregation at the McConnell Unit in Beeville, Texas. A Spears[1] hearing was conducted on July 3, 2008. The following allegations were made in plaintiff's original complaint, or at the hearing.

On July 5, 2007, officers conducted an annual search of the inmates' living quarters. (D.E. 1, at 7). Officer Menchaca approached cell C-5, where plaintiff was housed, and ordered him to place his property on his bunk. Id. at 7. After he complied, Officer Menchaca ordered him to submit to a "body search." Id. For a prisoner housed in administrative segregation, this entails undressing, passing his clothes through the tray slot, and undergoing a visual inspection. Id. at 8. Plaintiff complied; however, as Officer Menchaca handed plaintiff his clothes back

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).

through the tray slot, he observed plaintiff concealing something in his hand. Id. He ordered plaintiff to "release whatever he had in his hand." Id. Plaintiff complied, revealing a Motorola cellular phone charger with a black cord. Id. He was then searched again, restrained, and taken from his cell, leaving his personal property on his bunk. Id.

Plaintiff was advised of his Miranda rights, and subsequently declined to be interviewed.[2] (D.E. 1, at 9). The interviewer told officers to search him thoroughly and place him in a holding cell. Id. In the holding cell, officers discovered a cellular phone hidden in plaintiff's footwear. Id. He again declined to make a statement to the interviewer, and demanded that his other personal property be returned. Id. An officer informed him that Officer Menchaca would return his property later. Id. Plaintiff then refused to accept an assignment to cell E-74, triggering a use of force. Id. He was charged with a disciplinary violation for possessing the cellular phone. Id.; see also (D.E. 1, App. C).

On Friday, July 6, 2007, plaintiff was removed from cell E-74 and relocated to cell F-57. (D.E. 1, at 9). His personal property was not returned, nor was he given any state-issued items such as sheets or a mattress. Id. at 10. On Monday, July 9, 2007, officers returned his personal and state-issued property. Id. As he inspected it, plaintiff discovered that Officer Menchaca had not recorded all of his personal property on the inventory sheet, as TDCJ-CID regulations require. Id. Moreover, Officer Menchaca did not return numerous items of personal property: (1) a Smith-Corona typewriter; (2) five used typewriter ribbons; (3) two new typewriter ribbons; (4) five forty-one cent postage stamps; (5) three containers of baby powder; (6) one toothbrush;

---

[2] It is a felony for a TDCJ inmate to possess a cellular phone. Tex. Penal Code § 38.11(j). Plaintiff was convicted of this offense, and received a three-year prison term on March 10, 2008, in State v. Martinez, No. B-07-M015-0-PR-B.

(7) four ink pens purchased from the commissary; or (8) the TDCJ property registration sheets for his appliances. Id. at 11. Moreover, three pages containing contact information for plaintiff's friends and family had been ripped from a notebook. Id.

The inventory sheet did not indicate who had removed his property from his cell. Id. It also failed to explain why the items had not been returned. Id. Furthermore, plaintiff claims that the inventory sheet clearly shows that Officer Menchaca forged a witness signature. Id.[3]

On July 20, 2007, plaintiff filed a Step 1 grievance requesting that the missing items be returned.[4] (D.E. 1, App. A). On August 24, 2007, the Warden replied that the pens and stamps had been returned to him; however, the typewriter would not be returned because it had been tampered with, rendering it contraband. Id. at 2. On August 29, 2007, plaintiff filed a Step 2 grievance. (D.E. 1, App. B, at 1). He argued that the pens and stamps had not been returned, and that he had not been notified that his typewriter was to be confiscated as contraband. Id. Moreover, he explained that Officer Menchaca had personally given him permission to modify the typewriter by tying down the ribbon carrier, which broke after TDCJ officials mishandled it. Id. On November 2, 2007, plaintiff's Step 2 grievance was denied. Id. at 2. The grievance officer explained that no evidence showed that he had owned the ribbons, stamps, baby powder, toothbrush, or pens, or that TDCJ was responsible for their loss. Id. Moreover, his typewriter would not be returned because it had been altered, and used to hide a cellular phone charger cord in violation of TDCJ policy. Id.

---

[3] Plaintiff provides a blank property inventory form, (D.E. 1, App. D), but not the form on which Officer Menchaca allegedly forged the signature. (D.E. 1, at 11).

[4] In his Step 1 grievance, plaintiff describes the items as "missing or damaged." (D.E. 1, App. A, at 1).

Plaintiff also alleges that Officer Menchaca failed to inventory or return two packs of cookies and three packs of vanilla wafers taken from his cell on April 25, 2008. (D.E. 1, at 16). He has not sought relief in state court for any of the incidents alleged in this action.

Plaintiff is suing Officer Menchaca in his personal and official capacities for $250.00. (D.E. 11, at 1). He claims that Officer Menchaca wrongfully confiscated his typewriter in violation of TDCJ-CID policies, and of his due process rights. (D.E. 1, at 6). He claims also that Officer Menchaca intentionally withheld, lost, and damaged "important documentation," and also forged witnesses' signatures and signed documents he was not authorized to sign in violation of TDCJ-CID rules and policies. Id.

Plaintiff is also suing TDCJ Director Nathaniel Quarterman in his official capacity, as the policymaker responsible for TDCJ-CID Administrative Directive 3.72. He argues that the policy, which governs the property of prisoners in administrative segregation, is constitutionally inadequate because it leaves offenders with no means to prove deprivation of property. (D.E. 1, at 7); (D.E. 18, at 2-3). He also claims that, because the policy leaves inmates with no effective means of redress, officers regularly "do as they please without following TDCJ policies." (D.E. 1, at 7).

## II.  DISCUSSION

Defendants assert qualified immunity as a defense to plaintiff's discovery request. Qualified immunity provides officials "not just immunity from liability, but immunity from suit," including discovery. Vander Zee v. Reno, 73 F.3d 1365, 1368 (5th Cir. 1996) (citations omitted). Indeed, the Fifth Circuit has explained that "[e]ven limited discovery on the issue of qualified immunity 'must not proceed until the district court *first* finds that the plaintiff's

pleadings assert facts which, if true, would overcome the defense qualified immunity.'" Id. at 1368-69 (citing Wicks v. Mississippi State Employment Serv., 41 F.3d 991, 994 & n.10 (5th Cir. 1995) (emphasis in original)).

The threshold question in a qualified immunity analysis is "'whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right.'" Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003) (quoting Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001)); accord Saucier v. Katz, 533 U.S. 194, 201 (2001). If a constitutional violation is alleged, the Court must next determine "whether the right was clearly established–that is whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Mace, 333 F.3d at 624 (quoting Price, 256 F.3d at 369). Once a defendant has invoked the defense of qualified immunity, the burden shifts to the plaintiff to show that the defense is inapplicable. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

The Fifth Circuit has explained that the Supreme Court's jurisprudence on the qualified immunity defense establishes "that qualified immunity does not shield government officials from all discovery, but only from discovery which is either avoidable or overly broad." Lion Boulos v. Wilson, 834 F.2d 504, 507 (5th Cir. 1987) (emphasis added). The court further elaborated on when discovery may be permitted despite the assertion of qualified immunity:

> Discovery orders entered when the defendant's immunity claim turns at least partially on a factual question; when the district court is unable to rule on the immunity defense without further clarification of the facts; and which are narrowly tailored to uncover only those facts needed to rule on the immunity claim are neither avoidable or overly broad.

Id. at 507-08.

**A.      Plaintiff's Claim Against Defendant Menchaca.**

   **1.      Step One:  Constitutional Violation.**

The Fourteenth Amendment of the Constitution provides that no State shall "deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV § 1.  However, the negligent loss or destruction of property does not violate an inmate's constitutional rights.  Daniels v. Williams, 474 U.S. 327, 328 (1986).  Furthermore, the Supreme Court has held that even an intentional deprivation of property does not violate the Due Process Clause if it is unauthorized, and the State provides an adequate post-deprivation remedy.  See Hudson v. Palmer, 468 U.S. 517, 534-35 (1984); Parratt v. Taylor, 451 U.S. 527, 543 (1981); accord Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996) (per curiam).  "The [Parratt/Hudson] doctrine is meant to protect the state from liability for failing to provide pre-deprivation process in situations where it cannot anticipate the need for such process (when the actions complained about are random and unauthorized)."  Brooks v. George County, Miss., 84 F.3d 157, 165 (5th Cir. 1996) (citation omitted).  For this type of violation, "postdeprivation process is all that is due because no predeprivation safeguards would be of use in preventing the kind of deprivation alleged."  Zinermon v. Burch, 494 U.S. 113, 139 (1990).

However, the Parratt/Hudson doctrine applies only when the conduct is "unauthorized in the sense that it was not within the officials' express or implied authority."  Stotter v. University of Tex. at San Antonio, 508 F.3d 812, 822 (5th Cir. 2007) (citing Caine v. Hardy, 943 F.2d 1406, 1413 (5th Cir. 1991) (en banc)).  Conduct is not unauthorized where "the state 'delegated to [the defendants] the power and authority to effect the very deprivation complained of.'"  Allen v. Thomas, 388 F.3d 147, 149 (5th Cir. 2004) (quoting Zinermon, 494 U.S. at 138); see also

Brooks, 84 F.3d at 165 ("actions in accordance with an 'official policy' ... can hardly be labeled 'random and unauthorized'") (citation omitted).  Moreover, the Fifth Circuit has determined that the Parratt/Hudson doctrine does not protect conduct authorized by TDCJ Administrative Directive 3.72.  Allen, 388 F.3d at 149.  The Allen court explained that because the typewriter was "confiscated under the authority of a prison directive [AD 3.72], the confiscation was not a random, unauthorized act by a state employee."  Id.  Thus, although Texas' postdeprivation remedy for deprivation of property is adequate, plaintiff was not required to seek relief in state court before filing this action asserting a denial of due process.

Plaintiff alleges that his property was seized based on TDCJ Administrative Directive 3.72.  Such a claim establishes a constitutional violation.

    **2.**       **Step Two: Objective Reasonableness.**

Step two of the qualified immunity analysis requires courts to determine whether the defendant's conduct "was objectively reasonable in light of clearly established law." Thompson v. Upshur County, Tex., 245 F.3d 447, 457 (5th Cir. 2001) (citations omitted).  "Fair warning" is the central concept in this analysis.  Bush v. Strain, 513 F.3d 492, 501-02 (5th Cir. 2008) (citations omitted).  The Fifth Circuit has explained that "[t]he law can be clearly established 'despite notable factual distinctions between the precedents relied on..., so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" Kinney v. Weaver, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quoting Hope v. Pelzer, 536 U.S. 730, 740 (2002)).  Thus, "when the defendant moves for summary judgment based on qualified immunity, it is the plaintiff's burden to demonstrate that all reasonable officials similarly situated would have then known that the alleged acts of the defendants violated the

United States Constitution." Thompson, 245 F.3d at 457 (citation omitted).

While plaintiff has a right to be free from constitutional violations regarding the loss of his property, defendant Menchaca may have taken the property pursuant to a TDCJ policy. Therefore, his actions may have been objectively reasonable. Accordingly, plaintiff is not entitled to discovery unrelated to disputes regarding defendant Menchaca's defense of qualified immunity.

**B.     Plaintiff's Claim Against Defendant Quarterman.**

   **1.     Step One:  Constitutional Violation.**

Supervisors may be liable for injuries caused by their own acts or omissions. Id. at 472 n.6 (citing Alton v. Tex. A&M Univ., 168 F.3d 196, 200 (5th Cir. 1993)). This liability includes injuries caused by unconstitutional policies for which they are responsible. Burge v. St. Tammany Parish, 336 F.3d 363, 369 (5th Cir. 2003). Such a policy can be either one that is "officially adopted," or a "persistent, widespread practice" which "is so common and well settled as to ... fairly represent [official] policy." Id. (quoting Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984) (per curiam)). "A claim of a violation of section 1983 pursuant to ... a persistent, widespread practice ... may in an appropriate case also encompass allegations that a policymaker failed to act affirmatively, including a failure to adequately train a subordinate." Id.

The Supreme Court has explained that due process is "a flexible concept that varies with the particular situation." Zinermon, 494 U.S. at 127. Determining what procedural protections the Constitution requires entails weighing several factors:

> First, the private interest that will be affected by the official action;
> second, the risk of an erroneous deprivation of such interest
> through the procedures used, and the probable value, if any, of
> additional or substitute procedural safeguards; and finally, the

>government's interest, including the function involved and the
>fiscal and administrative burdens that the additional or substitute
>procedural requirement would entail.

Id. (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)); see also id. at 128 ("*Parratt* and *Hudson* represent a special case of the general *Mathews v. Eldridge* analysis, in which postdeprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide.").

Based on the allegations presented, plaintiff may be able to prove that TDCJ policies caused him to be unconstitutionally deprived of property. See Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (in official capacity suits, plaintiffs need only "provide 'a short and plain statement of the claim,'" as opposed to alleging "specific conduct giving rise to a constitutional violation" in individual capacity suits).

### 2. Step Two: Objective Reasonableness.

Even if plaintiff has established a constitutional violation by defendant Quarterman, he has not demonstrated any personal involvement by defendant Quarterman in promulgating the policy at issue. Moreover, there is nothing to demonstrate that the promulgation of the policy was objectively unreasonable. Accordingly, plaintiff is not entitled to discovery unrelated to disputes regarding defendant Quarterman's defense of qualified immunity.

### C. Plaintiff's Motion For Defendant To Comply With Disclosure.

Plaintiff argues that as of October 14, 2008 he has not received the initial disclosures from defendants. (D.E. 48). Defendants respond that the disclosure was mailed on October 10, 2008 and received at the McConnell Unit on October 14, 2008 at 11:21 a.m. (D.E. 49, at 1). They attach a copy of a United States Postal Service Track & Confirm sheet indicating that a

package was delivered at that date and time.  Accordingly, plaintiff's motion for defendants to comply with disclosure is denied.

### III.  CONCLUSION

Accordingly, defendants' motion for a protective order, (D.E. 45), is GRANTED. Defendants are ORDERED to produce only those documents which address defendants' qualified immunity defense.  Finally, plaintiff's motion for defendants to comply with disclosure, (D.E. 48), is DENIED as moot.

ORDERED this 20th day of October 2008.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE