IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSHUA DAVID MARTINEZ | § | |
|    TDCJ-CID #1076379 | § | |
| v. | § | C.A. NO. C-08-197 |
| | § | |
| R. MENCHACA, ET AL. | § | |

## MEMORANDUM AND RECOMMENDATION
## ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In this § 1983 civil rights action, plaintiff challenges the property policy of the Texas Department of Criminal Justice ("TDCJ") Administrative Directive 3.72 ("A.D. 3.72"), arguing that it deprives inmates of proving a property deprivation, in violation of the Due Process Clause.  (D.E. 1).  In addition, he is suing individual defendants in their individual capacities alleging that they acted unconstitutionally when they seized, lost, or destroyed his property.  Id. Defendants move for summary judgment to dismiss plaintiff's claims arguing that TDCJ's property policy is constitutional on its face and provides inmates with ample due process rights.  (D.E. 138).  They also argue that they are entitled to qualified immunity.  Id.  Plaintiff has filed a response in opposition.  (D.E. 175).

For the reasons stated herein, it is respectfully recommended that the Court grant summary judgment in defendants' favor, and dismiss plaintiff's claims with prejudice.

# I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

# II. PROCEDURAL BACKGROUND

Plaintiff is an inmate in the Correctional Institutions Division of the TDCJ, and at all times relevant to this lawsuit, was housed in administrative segregation at the McConnell Unit in Beeville, Texas. He filed his original complaint on June 18, 2008, alleging that, during a July 5, 2007 search of the prison, defendants seized his personal property pursuant to A.D. 3.72, following which, certain items of his property were either lost, stolen, or destroyed. (D.E. 1). Plaintiff claims that the policy authorizing the search of his property is unconstitutional because it does not provide a means for an inmate to account for his property before and after the search, thus making it impossible to prove a lost property claim in state court or other proceeding, such that it violates his due process rights.

On July 3, 2008, plaintiff filed an amended complaint. (D.E. 18). In addition, a Spears[1] hearing was held on that day, after which plaintiff's claims

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

2

against Brad Livingston were dismissed, (D.E. 23), and service was ordered on defendants Rafael Menchaca, Ed Owens, and Nathaniel Quarterman.  (D.E. 24).

On September 10, 2008, defendants filed their Answer and raised the defense of qualified immunity.  (D.E. 36).  On November 14, 2008, plaintiff filed a motion for summary judgment.  (D.E. 67).  On December 15, 2008, he filed his second amended complaint adding a claim for loss of property arising on July 21, 2007.  (D.E. 79).

On January 28, 2009, it was recommended that plaintiff's motion for summary judgment be denied, (D.E. 126), and on March 4, 2009, the Court adopted the recommendation and denied plaintiff's summary judgment motion. (D.E. 140).

On March 3, 2009, defendants filed a motion for summary judgment.  (D.E. 138).  On March 4, 2009, they filed a supplement to their motion for summary judgment.  (D.E. 142).  Following an extension of time, (D.E. 160), plaintiff filed his summary judgment response on May 1, 2009.  (D.E. 175).  On May 19, 2009, this action was stayed for a certain period of time.  (D.E. 183).  On July 6, 2009, plaintiff filed a supplemental response to the summary judgment motion.  (D.E. 194).

### III.  SUMMARY JUDGMENT EVIDENCE

In support of their motion for summary judgment, defendants offer: a copy of TDCJ Administrative Directive 3.72, (D.E. 138, Ex. A); a copy of the TDCJ administrative segregation plan, (D.E. 138, Ex. B); the affidavit of Rafael Menchaca, (D.E. 138, Ex. C); affidavit of no use of force, (D.E. 138, Ex. D); TDCJ Offender Orientation Manual, (D.E. 138, Ex. E); relevant portions of plaintiff's property inventory, (D.E. 138, Ex. F); relevant portions of plaintiff's disciplinary file, (D.E. 138, Ex. G); relevant portions of plaintiff's grievance file, (D.E. 138, Ex. H); Security Memorandum 3.01 regarding Comprehensive Unit Shakedowns, (D.E. 138, Ex. I); Security Memorandum 3.02 regarding security searches, (D.E. 138, Ex. J); and Security Memorandum 3.03 regarding contraband processing. (D.E. 138, Ex. K).

In his summary judgment response, (D.E. 175), plaintiff offers: a copy of plaintiff's property inventory sheets for June 1, 2006 to June 1, 2008, (D.E. 175, Ex. A); a copy of the TDCJ's disciplinary rules and procedures for offenders, (D.E. 175, Ex. B); a copy of defendant Menchaca's answers to interrogatories, (D.E. 175, Ex. C); relevant portions of plaintiff's disciplinary record, (D.E. 175, Ex. D); activity log for July 9, 2007, (D.E. 175, Ex. E); unsworn declaration of offender

Adrian Arrizon, (D.E. 175, Ex. F), and a deposition by written questions of Officer

Belinda Fernandez.  (D.E. 194, Ex. A).

The summary judgment evidence establishes the following:

On July 5, 2007, plaintiff's cell was searched pursuant to a unit wide

shakedown.  (D.E. 175, at 3).  At the time, plaintiff was housed in administrative

segregation  Id.  Defendant Menchaca ordered plaintiff to place all his property on

his bunk.  Id.  In addition, he ordered plaintiff to submit to a body search.[2]  Id.

During the body search, plaintiff attempted to hide a Motorola phone charger.

Officer Menchaca ordered him to "release whatever he had in his hand," and

plaintiff complied.  (D.E. 175, at 3; D.E. 138, Ex. G, at 2).  Another body search

was conducted, with no more items being found.  (D.E. 175, at 3).  Plaintiff was

then placed in hand restraints and escorted to the C and D holding cage, leaving his

personal property on his bunk.  Id.  His property was bagged and then stowed in

the property room.  (D.E. 138, Ex. C) (Menchaca Aff. at ¶ 4).

Shortly thereafter, plaintiff was interviewed by an internal affairs

investigator, Susan Poole.  (D.E. 175, at 3).  Officer Menchaca was present in the

room with a xeroxed photo of the phone charger.  Id.  Ms. Poole advised plaintiff

_____

[2] A body search requires the offender to undress and pass his clothing through the cell
door tray slot to undergo a visual inspection of the body.  (D.E. 175, at 3).

5

of his <u>Miranda</u> rights.  <u>Id.</u>  Plaintiff refused to be interviewed, or to sign the

<u>Miranda</u> warning document.  <u>Id.</u>  As he started to leave, Major Ambriz observed

that plaintiff's gait was unsteady, and he instructed Officer McCumber to search

him before placing him in the C and D holding cage.  <u>Id.</u>

 When Officer McCumber and plaintiff were outside of the C and D holding

cage, Officer McCumber ordered him to remove his shower slides, but he refused.

<u>Id.</u>  Major Ambriz was summoned and when he arrived, he ordered plaintiff to take

off his shower shoes.  <u>Id.</u>  Plaintiff complied, revealing a Motorola cell phone

wrapped in a black sleeve which resulted in him being placed in a holding cell.  <u>Id.</u>

 In the holding cell, plaintiff demanded his personal property.  <u>Id.</u> at 4.  An

officer told him that Officer Menchaca would return his property later.  <u>Id.</u>

Plaintiff then refused to accept an assignment to cell E-74, triggering a use of

force.  <u>Id.</u>

 In an offense report dated July 5, 2007, Officer Menchaca charged plaintiff

with possession of the Motorola phone charger, a Level 1, Code 10 felony.  (D.E.

138, Ex. G, at 2-3).  In a separate offense report, Major Ambriz charged plaintiff

with possession of a cell phone in a black sleeve.  <u>Id.</u> at 5-6.  Plaintiff was advised

of the charges against him and appointed a counsel substitute.  <u>Id.</u> at 1.

On July 6, 2007, plaintiff was removed from cell E-74 and relocated to cell F-57.  (D.E. 175, at 4).  His personal property was not returned, nor was he given any state-issued items such as sheets or a mattress.  Id.

On July 9, 2007, plaintiff's property was inventoried by Officer Menchaca and a property log was completed.  (D.E. 138, Ex. C, at 5).  Officer Fernandez' name is listed on the inventory as having witnessed the property being inventoried. Id.  Officer Fernandez testified that she did not recall witnessing the taking of inventory of plaintiff's property.  (D.E. 194, Ex. A, at 10).  She indicated that she did not sign her signature on the property form.  Id.  The property form indicated that plaintiff's typewriter and radio were confiscated because they had been altered.  Id. at 16.  Officer Fernandez testified that she was not aware of defendant violating any TDCJ policies.  Id. at 5.

After defendant inventoried plaintiff's property, Officer Dugan and Officer Vasquez brought plaintiff several red chain bags of property and a copy of the Prop-05 inventory sheet used by Officer Menchaca.  (D.E. 175, at 6).  In reviewing the Prop-05 inventory form, plaintiff believed that certain items were not listed on the inventory, nor were they returned to him.  Id.  Officer Fernandez testified that contraband would not be identified on a property form.  (D.E. 194, Ex. A, at 6).

On July 11, 2007, plaintiff filed a Step 1 grievance alleging that he was missing certain items of property.  (D.E. 123, at 5).[3]  In particular, plaintiff claimed the following items were missing: (1) a Smith-Corona typewriter, H series; (2) five used typewriter ribbons; (3) two new typewriter ribbons; (4) five forty-one cent postage stamps; (5) three containers of baby powder; (6) one toothbrush; (7) four ink pens purchased from the commissary; and (8) the TDCJ property registration sheets for his appliances.  Id. at 11.  Moreover, three pages containing contact information for plaintiff's friends and family had been ripped from a notebook.  Id.

Plaintiff's July 11, 2007 Step 1 grievance was denied.  Id.[4]  Warden Crites responded that the typewriter had been "tampered with," and as such, was classified as contraband and would not be returned.  Id.  He stated that plaintiff's pens and stamps had been returned.  Id.  Plaintiff's step 2 grievance was also denied.  Id. at 2-3.

On July 12, 2007, a disciplinary hearing was held on the charges of possessing the cell phone charger and cell phone.  (D.E. 138, Ex. G, at 1).  Plaintiff offered no statement and pled not guilty.  Id. at 3, 1.  After considering the officer's

---

[3] This grievance is not included in defendants' Exhibit H, plaintiff's grievance file, to their motion for summary judgment.

[4] In his Step 1 grievance, plaintiff describes the items as "missing or damaged."  (D.E. 1, App. A, at 1).

report and the xeroxed photo of the charger and phone, the disciplinary hearing officer found plaintiff guilty as charged.  Id. at 4, 1.  As punishment, plaintiff received 45 days loss of good time credits, 15 days loss of recreation, 30 days loss of commissary, and his line class was reduced from L2 to L3.  Id.

On July 21, 2007, a fire broke out between plaintiff's cell and his neighbor's cell in the ventilation pipes.  (D.E. 79 at 1-2).  Plaintiff and his neighbor, Offender Shropshire, began calling for help.  Id. at 2.  After approximately fifteen minutes, Officer Padilla came and observed the situation, then left to get help.  Id.  He returned three minutes later with additional officers.  Id.  The pipe chase was opened and the fire extinguished.  Id.  Thereafter, plaintiff was escorted to the infirmary.  Id.  After being cleared by medical, plaintiff was placed in E pod, 76-cell, but with none of his personal property.  Id. at 3.  The officers assured him that his property would be brought to him as soon as possible.  Id.  Later, plaintiff observed Offender Shropshire receive his property, but he did not receive his.  Id.  Plaintiff asked Lieutenant Thompson when he would get his property, and he informed him that he was on property restriction.  Id.

An investigation as to the cause of the fire was conducted.  In an Offense Report dated July 21, 2007, Officer Villarreal concluded that plaintiff had started the fire.  (D.E. 138, Ex. G, at 15).  After the fire had been extinguished, Officer

Villarreal inspected plaintiff's previous cell.  <u>Id.</u>  He discovered thin wires stuck into the light bulb through a hole in the plastic cover of the light fixture.  <u>Id.</u>  The wires ran down into the bottom vent, next to the toilet, into the pipe chase, and were touching the insulation that had been wrapped around the pipes, causing the insulation to burn.  <u>Id.</u>  On July 23, 2007, plaintiff was charged with intentionally damaging the light fixture, lights, and the pipe chase by starting a fire.  <u>Id.</u> at 7.

On July 25, 2007, Officer Segovia brought plaintiff four red chain bags of his property.  (D.E. 79, at 3).  There was no inventory sheet regarding the property. <u>Id.</u>  Plaintiff found the following items to be missing: (1) his prison I.D. card; (2) forty stamps; (3) two Colgate tooth pastes; (4) two containers of shampoo; (5) four legal tablets; and (6) a criminal law handbook.  <u>Id.</u>

 A disciplinary hearing was held on July 31, 2007 concerning the charges that plaintiff damaged and destroyed state property by causing a fire in the pipe chase.  (D.E. 138, Ex. G, at 7).  Following the hearing, he was found guilty as charged and received 10 days loss of good time credits, 15 days recreation restriction, and 30 days commissary restriction.  <u>Id.</u>

On July 30, 2007, plaintiff filed a Step 1 grievance complaining about his allegedly missing property after the fire.  (D.E. 138, Ex. H, at 1-2).  On September 6, 2007, Warden Jackson denied his grievance:

> Investigation into your complaint has been completed.
> This office has revealed that you caused the fire in your
> cell and items lost was not caused by the agency.  Any
> property that was destroyed will not be replaced.  In
> addition, you have your I.D. card.  No further action
> taken.

Id. at 2.

On September 12, 2007, plaintiff filed a Step 2 grievance appealing the

decision.  Id. at 3-4.  On October 11, 2007, his grievance concerning missing

property after the fire was denied.  Id. at 4.[5]

## IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material

fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(c).  An issue is genuine "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided

---

[5] In his summary judgment response, plaintiff raises for the first time a loss of property claim for events occurring in April 2008.  (D.E. 175 at 10-12).  This claim was not raised in his complaint, (D.E. 1), first amended complaint, (D.E. 11), or second amended complaint, (D.E. 79), nor was plaintiff granted leave to raise this new claim.  It would prejudice defendants to consider this claim without prior notice.  Moreover, there is no reason why plaintiff could not have included this claim in his December 3, 2008 motion for leave to file second amended complaint. (D.E. 76).  Thus, it is respectfully recommended that, to the extent plaintiff raises a loss of property claim concerning events in April 2008, that claim be dismissed without prejudice.

that one party must prevail as a matter of law." Id. at 251-52.  In making this

determination, the Court must consider the record as a whole by reviewing all

pleadings, depositions, affidavits and admissions on file, and drawing all justifiable

inferences in favor of the party opposing the motions.  Caboni v. Gen. Motors

Corp., 278 F.3d 448, 451 (5th Cir. 2002).

The Court may not weigh the evidence or evaluate the credibility of

witnesses.  See id.  Furthermore, "affidavits shall be made on personal knowledge,

shall set forth such facts as would be admissible in evidence, and shall show

affirmatively that the affiant is competent to testify on the matters stated therein."

Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969

F.2d 1559 (5th Cir. 1992).

The moving party bears the initial burden of showing the absence of a

genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party demonstrates an absence of evidence supporting the

nonmoving party's case, the burden shifts to the nonmoving party to come forward

with specific facts showing that a genuine issue for trial does exist.  Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  To sustain this

burden, the nonmoving party cannot rest on the mere allegations of the pleadings.

Fed. R. Civ. P. 56(c);  Anderson, 477 U.S. at 248-49.  "After the nonmovant has

been given an opportunity to raise a genuine factual issue, if no reasonable juror

12

could find for the nonmovant, summary judgment will be granted." Caboni, 278

F.3d at 451.  "If reasonable minds could differ as to the import of the evidence . . .

a verdict should not be directed." Anderson, 477 U.S. at 250-51.

## V.  DISCUSSION

Defendants claim they are entitlement to judgment in their favor on the

affirmative defense of qualified immunity.  They argue that plaintiff fails to state a

constitutional violation because, despite plaintiff's belief to the contrary, A.D. 3.72

prohibits any inmate from being in his cell during a search, such that administrative

segregation and non-administrative segregation prisoners are treated the same in

this regard.  (D.E. 138, Ex. A).  Moreover, they argue that A.D. 3.72 provides

adequate notice to prisoners of what property they are permitted to possess and the

consequences of possessing contraband.

## A.    Standard For Qualified Immunity.

The doctrine of qualified immunity affords protection against individual

liability for civil damages to officials "insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person

would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations

omitted).  Immunity in this sense means immunity from suit, not merely from

liability. Jackson v. City of Beaumont Police Dep't, 958 F.2d 616, 620 (5th Cir.

1992) (citation omitted).  The Fifth Circuit has explained that "[q]ualified

13

immunity is designed to shield from civil liability 'all but the plainly incompetent or those who knowingly violate the law.'" Brady v. Fort Bend County, 58 F.3d 173, 174 (5th Cir. 1995) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

There are two steps in the qualified immunity analysis. Hampton Co. Nat'l Sur., LLC v. Tunica County, Miss., 543 F.3d 221, 225 (5th Cir. 2008). First, viewing the evidence in the light most favorable to plaintiff, the Court determines whether the defendant violated the plaintiff's constitutional rights. Id. (citing Saucier v. Katz, 533 U.S. 194, 199 (2001)). "Whether there is evidence to support the conclusion that a constitutional right was violated is a legal question." Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).

At the second step, the Court considers "whether 'the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.'" Id. (citation omitted). Applying this standard, the Court must determine "whether reasonably competent officers would have known that their actions violated law which was clearly established at the time of the disputed action." Id. (citation omitted). The Court applies "current law to the first step and the law at the time of the incident to the second step...." Flores v. City of Palacios, 381 F.3d 391, 395 n.3 (5th Cir. 2004) (citation omitted).

While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then

determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory.  <u>Pearson v. Callahan</u>, 555 U.S. __, 129 S. Ct. 808, 818 (Jan. 21, 2009) (receding from <u>Saucier v. Katz</u>, 533 U.S. 194 (2001)).

### 1.    Step 1 - Constitutional violation.

Plaintiff claims that his property was taken in violation of his due process rights on July 5, 2007, and July 21, 2007.

Prisoners do not have a reasonable expectation of privacy in their cells. <u>Hudson v. Palmer</u>, 468 U.S. 517, 526 (1984).  Prison officials may search their cells at any time.  <u>Id.</u> at 528-29.  Moreover, it is well settled that a state actor's negligent or intentional deprivation of an inmate's property does ***not*** result in a violation of procedural due process rights if there exists an adequate state post-deprivation remedy.  <u>Id.</u> at 533 (intentional conduct); <u>Parratt v. Taylor</u>, 451 U.S. 527, 543-44 (1981) (negligent conduct); <u>see also</u> <u>Myers v. Klevenhagen</u>, 97 F.3d 91, 94-95 (5th Cir. 1996) (per curiam) (noting that Texas state law provides an adequate post-deprivation remedy for the taking of property in a suit for conversion); Tex. Gov't Code § 501.007 (providing that inmates may recover up to $500.00 on a claim that the TDCJ lost or damaged personal property).

However, the Fifth Circuit has held that inmates ***do*** have a basis for a due process claim when property is confiscated pursuant to policy.  <u>Allen v. Thomas</u>,

15

388 F.3d 147, 149 (5th Cir. 2004).  Here, plaintiff claims that the confiscation of

his property was performed pursuant to A.D. 3.72.  To prevail on his claim,

however, he must establish that his property was taken without due process.

The Fourteenth Amendment of the Constitution provides that no State shall

"deprive any person of life, liberty, or property without due process of law."  U.S.

Const. amend. XIV § 1.  Where a protected interest is present, the government may

effect a deprivation only after it has accorded due process.  Wilkinson v. Austin,

545 U.S. 209, 224-25 (2005).  At a minimum, due process requires that any

deprivation of a protected interest "be preceded by notice and opportunity for

hearing appropriate to the nature of the case."  Mullane v. Central Hanover Bank &

Trust Co., 339 U.S. 306, 313 (1950).  "It is equally fundamental that the right to

notice and an opportunity to be heard 'must be granted at a meaningful time and in

a meaningful manner.'"  Fuentes v. Shevin, 407 U.S. 67, 80 (1972) (quotation

omitted).

The Supreme Court has explained that "due process is flexible and calls for

such procedural protections as the particular situation demands."  Morrissey v.

Brewer, 408 U.S. 471, 481 (1972).  The necessary amount and nature of the

process due depends upon an analysis of three factors: (1) the private interest that

will be affected by the official action in conjunction with the probable value of any

additional or substitute procedural safeguards; (2) the risk of erroneous deprivation

16

of such interest through the procedures used; and (3) the state's interest, including the function involved and the fiscal administrative burdens that the additional or substitute procedural requirement would entail.  Mathews v. Eldridge, 424 U.S. 319, 335 (1976) (citation omitted).  The courts must weigh these factors to determine whether a state has met the fundamental requirements of due process by affording an opportunity to be heard at a meaningful time and in a meaningful manner.  City of Los Angeles v. David, 538 U.S. 715, 717 (2003) (per curiam).

Administrative Directive 3.72 is entitled "Offender Property" and is the TDCJ's written policy that governs the acquisition, possession, storage, and disposition of inmate property while the inmate is in custody; the confiscation and disposition of inmate property designated as contraband; and claims by inmates for property which is lost, damaged, stolen, or destroyed.  See generally (D.E. 138, Ex. A).  The policy's primary purpose is to maintain security within TDCJ prison units by designating specific property and property categories that inmates are allowed to possess, id. at 4-14, and property designated as contraband that inmates are banned from possessing.  Id.  at 19-20.  During their intake to TDCJ, each inmate is provided with a copy of the Offender Orientation Handbook.  (D.E. 138, Ex. E). It advises inmates about the property policy and describes the types of property they are allowed to possess, and the types of property that are considered contraband.  (D.E. 138, Ex. A, at 4-14, 19-20).

The policy employs the use of specific forms to categorize and inventory property.  At intake, the property of each incoming inmate is listed and categorized according to Form Prop-01.  (D.E. 138, Ex. A, at 7 & attach. A).  All property possessed by an inmate at intake is also documented on a Form Prop-03.  Id. at 7 & attach. H.  Each time an inmate is transferred to a new unit, inventories are conducted and recorded on a Prop-05 form.  Id. at 18.  The property office maintains copies of the inmate's property inventory, including any new, registered items.  Id.

Contraband is any property not authorized to be possessed by an inmate, and it is categorized as dangerous or non-dangerous.  (D.E. 138, Ex. A, at 19-20).  Dangerous contraband is considered anything that represents a threat to the security and safety of the unit.  Id. at 20.  Non-dangerous contraband is anything that represents a threat to the management of the unit, including excessive property and incorrectly stored property.  Id.

When property is confiscated, it is listed on form Prop-08.  (D.E. 138, Ex. A, at 20 & attach. K).  With non-dangerous contraband, the offender has the option to mail it to someone on his visitor list, give the item at a visitor's next visit, or ask the TDCJ to dispose of it.  Id. at 23.  Dangerous contraband is processed pursuant to Security Memorandum 3.03 entitled "Contraband Processing."  Id. at 20.  The dangerous contraband is not returned to the inmate, and the inmate may not

designate the disposition of this property.  (D.E. 138, Ex. K, at § II.A).  A picture is taken of the item and saved as documentation.  Id.  If an inmate feels that his property was lost, stolen, damaged or confiscated inappropriately, he can file a grievance.  (D.E. 138, Ex. E).

Plaintiff argues that the issue in this case is whether due process mandates that he be present when his property is inventoried.  He claims that A.D. 3.72 provides for non-administrative segregation prisoners to be present during the inventory of their property, but specifically excludes administrative segregation prisoners from this process.  However, due process does not require that all prisoners be treated equally, nor does it mandate the best possible due process. Moreover, plaintiff's argument that his inability to be present during the inventory necessarily defeats any conversion action in state court because he cannot prove his claim is fundamentally flawed.  He could establish possession of property items via his own testimony, witness testimony, commissary receipts, and past inventory or property forms.  The mere fact that he is not present during inventory does not state a due process claim.

Moreover, the uncontested summary judgment evidence establishes that A.D. 3.72 provides that no prisoner is to remain in his cell during a cell search. Inmates housed in administrative segregation are treated the same as inmates in general population as neither are supposed to remain in their cells during a search.

19

(D.E. 138, Ex. J, at 2) (Security Memorandum 3.02 entitled "Security Searches" mandates that "[t]he offender shall be removed from the area of the search...."). Thus, plaintiff's claim that administrative segregation prisoners are treated differently than non-administrative segregation prisoners is not supported by the evidence.

There is nothing inherently unconstitutional about the TDCJ's property policy or its application. As such, it is respectfully recommended that plaintiff fails to state a claim against defendant Quarterman or defendant Owens for implementing an unconstitutional policy.

Moreover, as to defendant Menchaca, A.D. 3.72 makes clear that property that has been altered will be considered contraband. Here, plaintiff's typewriter was found to have been altered to hide a phone charger. (D.E. 138, Ex. C) (Menchaca Aff. at ¶ 4). The phone charger was considered dangerous contraband, as was the typewriter that was altered to hide it. Id. Pursuant to A.D. 3.72, dangerous contraband is disposed of by prison officials without input by the prisoner. (D.E. 138, Ex. A, at 20). Thus, plaintiff was provided adequate notice that dangerous contraband would be seized and disposed.

Moreover, plaintiff fails to offer any authority that he has a protected interest in the possession of property that has been altered from its original condition, which TDCJ defines as "contraband," while in prison. See Lyon v. Farrier, 730

F.2d 525 527 (8th Cir. 1984) (per curiam) ("Because the property was contraband, [the inmate] cannot seriously argue that he had a protected property interest in it."); Baker v. Piggott, 833 F.2d 1539, 1540 (11th Cir. 1987) (per curiam) (confiscation of contraband did not violate an inmate's due process rights).

Whatever private interest is at stake, it must be evaluated within the context of the prison system and its attendant curtailment of liberties. See Mathews, 424 U.S. at 335. Notice and a fair opportunity for rebuttal are the most important mechanisms for purposes of avoiding erroneous deprivations. See Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 15-16 (1979). Here, plaintiff was provided with notice of the factual basis underlying the confiscation of his property, and he had the chance to challenge the confiscation of his property in grievances. (D.E. 138, Ex. E). As an administrative segregation prisoner in possession of contraband, he was entitled to no more. Plaintiff fails to establish that there is a serious risk of erroneous deprivation from the process afforded to him in this case, and he does not demonstrate that A.D. 3.72 as applied is unconstitutional.

The Supreme Court has emphasized that "[i]n the context of prison management," the state interest "is a dominant consideration" in weighing the Mathews v. Eldridge factors. Wilkinson, 545 U.S. at 228. Indeed, "[t]he State's first obligation must be to ensure the safety of guards and prison personnel, the

public, and the prisoners themselves." Id. (citation omitted).  The Supreme Court has recognized that prisons are volatile environments with heightened security concerns that demand "[u]nfettered access" to cells by prison officials so that contraband can be ferreted out to ensure institutional safety and sanitary surroundings.  Hudson, 468 U.S. at 526-27 (rejecting the argument that prison cells are protected by the Fourth Amendment from unreasonable searches and seizures in the form of random shakedowns).

The state prison system has a high interest in confiscating dangerous contraband that poses a risk to inmates and staff.  A.D. 3.72 provides notice, allows inmates a reasonable amount of personal property, and above all, maintains the safety of the persons within its walls.  Accordingly, it is respectfully recommended that the Court find that plaintiff's due process rights were not violated, and deny his claims for damages.

### 2.    Step 2 - Objective reasonableness.

Because plaintiff has failed to state a constitutional violation, the Court need not examine whether the defendants' actions were reasonable.  See Saucier, 533 U.S. at 201 (if the facts alleged do not establish that the officer's conduct violated a constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate).  It is respectfully recommended that defendants are entitled to qualified immunity.

## VI.  RECOMMENDATION

For the reasons stated herein, it is respectfully recommended that defendants' motion for summary judgment, (D.E. 138), be granted, and that plaintiff's claims be dismissed with prejudice.

Respectfully submitted this 7th day of August 2009.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C), Rule 72(b) of the Federal Rules of Civil Procedure, and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).